**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JANE DOE, | ) |
| Plaintiff, | ) Case No.: 24-cv-561 |
| v. | ) |
| WILLIAM WHITLEY and THE CITY OF CHICAGO, | ) **JURY DEMANDED** |
| Defendants. | ) |

**COMPLAINT**

NOW COMES Plaintiff JANE DOE, by and through her attorneys, ED FOX & ASSOCIATES, LTD., and complaining of Defendants WILLIAM WHITLEY and THE CITY OF CHICAGO, and states as follows:

**JURISDICTION AND VENUE**

1. This action arises under the United States Constitution and the Civil Rights Act of 1871 (42 U.S.C. Section 1983).

2. This Court has jurisdiction under and by virtue of 28 U.S.C. Sections 1343, 1331, and/or 1367.

3. The venue is founded in this judicial Court upon 28 U.S.C. Section 1391 as the acts complained of arose in this district.

**PARTIES**

4. At all times relevant, Plaintiff JANE DOE ("Plaintiff") was a citizen of the United States and was within the jurisdiction of this Court.

5. At all times relevant, Defendant WILLIAM WHITLEY, Star No. 6061 ("Defendant Whitley"), was a police officer at the Chicago Police Department ("CPD").

6. THE CITY OF CHICAGO ("Defendant City") is a political division of the State of Illinois and served as the employer of Defendant Whitley. Defendant Whitley acted as a representative, employee, and/or agent of Defendant City. Pursuant to the doctrine of *respondeat superior*, Defendant City bears liability for all state law claims committed by their representatives, employees, and agents acting within that scope.

7. At all times relevant, Defendant Whitley and Defendant City acted under the color of law. At all times relevant, Defendant Whitley acted within the scope of his employment. Defendant Whitley is being sued in his individual capacity. Defendant City is being sued in its official capacity.

## FACTUAL ALLEGATIONS

8. Defendant Whitley was a police officer in the CPD between approximately August 27, 1990, and May 29, 2019.

9. Defendant Whitley received at least twenty-nine complaints against him over his career before he was charged and convicted for sex trafficking of a minor in violation of 18 U.S.C. Section 1591(a)(1).

10. Seven of the complaints submitted against Defendant Whitley were sustained.

11. Five of the sustained complaints against Defendant Whitley were submitted by higher-ranking police officers.

12. The five sustained complaints submitted by higher-ranking police officers against Defendant Whitley were for the following incidences: accidentally discharging his firearm, failing to provide proper service for a fatal auto accident, concealing marijuana under the backseat of his police vehicle, disobeying a direct order from a higher-ranked female officer, and allowing a male prisoner to escape from custody while on watch.

13. Two of the complaints submitted by civilians against Defendant Whitley were sustained.

14. The two sustained citizen complaints against Defendant Whitley were for the following incidences: failing to arrest a man who had beaten his female partner with a metal pipe, and brutally beating a detainee suffering from a diabetic attack.

15. Regarding the first incident mentioned above, Plaintiff and his partner at the time responded to a call regarding a woman who was struck with a metal pipe during a domestic dispute. Defendant Whitley and his partner coded the job without completing a case report documenting the incident nor arresting the offender. The complainant went to the hospital on her own where she was treated for injuries to her body and head. The complaint was sustained against both Defendant Whitley and his partner.

16. Regarding the second incident mentioned above, numerous inmates and CPD employees witnessed Defendant Whitley beat a detainee, who was suffering from a diabetic attack. The inmates provided elaborate details about the brutal nature of Defendant Whitley's beating of the detainee. However, the CPD employees at the scene claimed they did not witness anything.

17. Furthermore, when one of the witnesses attempted to read Defendant Whitley's name and badge number, Defendant Whitley loudly exclaimed both his name and badge number and stated, "I don't give a fuck what you do."

18. Defendant Whitley had twenty-two complaints submitted against him that were unfounded or unsustained.

19. One of the complaints that a higher-ranking officer filed, alleged that Defendant Whiley and his partner left forty-six color Polaroid photos of nude and scantily clad females on the dashboard of their police vehicle.

3

20. Based on information and belief, many individuals in the photos were minors.

21. Defendant City and its investigators conducted an ineffective investigation into the matter. Despite no one else using the vehicle between Defendant Whitley and his partner and the discovery of the photos, the investigation concluded that the allegation against them was unsustained. The investigator suggested that someone may have planted the photos in the vehicle. Which is implausible. Also, Defendant City failed to ascertain the women's identities in the photos or determine if any of them were minors.

22. Most of the unfounded and unsustained civilian complaints against Defendant Whitley were submitted by women.

23. On multiple occasions involving different incidents, women submitted complaints generally stating independent instances when Defendant Whitley failed to arrest men who had battered them and, instead, left the men who committed the battery at the scene with them.

24. On one of those occasions, a woman submitted a complaint stating that she called the police because a man battered her, and Defendant Whitley told her, "If you press charges…I will lock your ass up and call DCFS to take away your kids."

25. On another occasion, a woman submitted a complaint stating that Defendant Whitley called her a "Bitch," pushed her against a wall, and threatened her with bodily harm.

26. On another occasion, a woman submitted a complaint stating that Defendant Whitley told her that he was "tired of seeing [her] monkey ass out here."

27. On many occasions, Defendant Whitley stated things like "I can do [whatever] the fuck I want," "Shut the fuck up, or I'll lock your ass up," and "I'll lock your ass up" to establish his authority over civilians.

28. The complaints mentioned above, whether sustained or not, should have raised

concerns within Defendant City that Defendant Whitley was a misogynist predator who abused his authority as a police officer.

29. An investigation and/or effective investigation into the incidents described above would have led Defendant City to confirm that Defendant Whitley was indeed a misogynistic predator who abused his power as a police officer. This would or should have resulted in his removal from his position as a police officer and the commencement of criminal charges.

30. Furthermore, the incidents above indicate that Defendant City has a longstanding custom and/or practice of failing to investigate, effectively investigate, and/or appropriately discipline its police officers.

31. Defendant City's failure to conduct an investigation, effective investigation, and/or appropriately discipline Defendant Whitney for his misconduct encouraged his continued engagement in police misconduct, including the sex trafficking, sexual conduct, and/or sexual penetration of Plaintiff when she was a minor.

32. Defendant City has a *de facto* widespread custom and/or practice of failing to investigate, effectively investigate, and/or appropriately discipline its police officers, whether on or off duty.

33. Defendant City also has maintained an entrenched code of silence for decades.

34. This code of silence discourages police officers from intervening to stop misconduct by their peers and Defendant City investigators from concealing such misconduct even when faced with clear instances and recurring patterns of misconduct.

35. The United States Department of Justice, Civil Rights Division, and the United States Attorney's Office, Northern District of Illinois, in their joint investigation of the CPD, stated that within the CPD, there are "numerous entrenched, systemic policies and practices that

undermine police accountability." They also note that "The City, police officers, and leadership within the Chicago Police Department, and its police officer union" acknowledge the existence of a code of silence among Chicago police officers.

36. On December 8, 2015, in an interview on WTTW, former Mayor Rahm Emanuel admitted that there is a "code of silence" among Chicago police officers.

37. Before her 2019 election, former Mayor Lori Lightfoot was Chairperson of the Chicago Police Accountability Taskforce. In 2016, the Chicago Police Accountability Taskforce acknowledged the "code of silence" within the CPD.

38. Defendant City has employed and continues to employ hundreds of police officers with long histories of citizen complaints. Defendant Whitley was one of those police officers.

39. Defendant City's failure to investigate, effectively investigate, and/or appropriately discipline its police officers has created a strong belief among them, including Defendant Whitley, that they are above the law and could act without facing appropriate disciple. Consequently, Defendant City's persistent and widespread *de facto* custom and/or practice served as the moving force behind Defendant Whitley's conduct, ultimately leading to the sex trafficking, sexual conduct, and/or penetration of minors, including Plaintiff, as detailed below.

40. In or around 2014, an approximately fourteen-year-old minor ("Minor A"), with braces on her teeth and visibly preadolescent, invited Plaintiff, a sixteen-year-old, who too was visibly preadolescent, to a party that Minor A said was hosted by a police officer named "Willie," whom she was having sex with.

41. On the way to the party, Minor A wore a gold necklace with a CPD badge that she said belonged to "Willie," and said something to the effect that he would protect them.

42. Upon entering the apartment, Minor A introduced Plaintiff to Defendant Whitley

6

and multiple other older men at the party.

43. While being introduced to Defendant Whitley and the men, Plaintiff noticed a silver CPD badge on a table, guns attached to the waists of most of the men, multiple handcuffs, and one man wearing a CPD jacket.

44. Plaintiff informed Defendant Whitley and the men at the party that she was only sixteen years old.

45. Defendant Whitley took Plaintiff into his bedroom, where a CPD jacket was hanging on the door.

46. Defendant Whitley engaged in sexual conduct and/or penetration with Plaintiff and had her do the same with multiple other men at the party.

47. Defendant Whitley compensated Plaintiff with both money and drugs in exchange for her participation in the sexual conduct and/or penetration involving him and/or the other men at the party.

48. On multiple occasions thereafter, Defendant Whitley contacted and met with Plaintiff in his vehicle. Defendant Whitley engaged in sexual conduct and/or penetration with Plaintiff in exchange for money and drugs.

49. On one occasion, Defendant Whitley contacted Plaintiff, telling her he wanted to meet before his shift. The two met in his vehicle, where Defendant Whiley wore a CPD jacket, a gold necklace with a CPD badge, and a gun on his waist. Defendant Whitley engaged in sexual conduct and/or penetration with Plaintiff in exchange for money and drugs.

50. On multiple other occasions, Plaintiff attended additional parties hosted by Defendant Whitley at his apartment.

51. On most occasions, there was a Chicago Police vehicle parked outside Defendant

7

Whitley's apartment, Defendant Whitley's CPD jacket was hung on the door in his bedroom, most of the men had guns on their waists, one of the men wore a CPD jacket, there were multiple handcuffs in the apartment, and there were multiple CPD badges in the apartment.

52. Defendant Whitley had Plaintiff and Minor A engage in sexual conduct and/or penetration with each other while other people in the apartment watched.

53. Additionally, Defendant Whitley took nude photos of Plaintiff.

54. Defendant Whitley instructed Plaintiff to bring other minors with her next time. Defendant Whitley said, "The younger, the better."

55. Subsequently, Plaintiff brought two minors with her to a party hosted by Defendant Whitley at his apartment. Defendant Whitley and/or the men at the party engaged in sexual conduct and/or penetration of the minors in exchange for money and drugs.

56. Defendant Whitley became increasingly aggressive with Plaintiff when engaging in sexual conduct and/or sexual penetration with her.

57. On multiple occasions, while Plaintiff was inside Defendant Whitley's vehicle, Defendant Whitley pointed out people and yelled things like, "That's the type of shit I lock people up for" and "Bitch, I'm the police."

58. On one occasion, as Defendant Whitley and Plaintiff were walking down a hallway, an individual accidentally bumped into him. In response, Defendant Whitley revealed his gold necklace with the CPD badge concealed under his shirt, drew his firearm, pointed it at the person, and threatened to arrest him.

59. After the incident described in the paragraph above, Plaintiff temporarily left the State of Illinois out of fear that Defendant Whitley might physically harm her. Plaintiff has not seen him since.

60. Since approximately sometime in 2016, Plaintiff had suppressed and/or repressed her memories associated with Defendant Whitley until approximately January 11, 2024, when Plaintiff's mother informed her that the FBI had contacted her regarding a criminal case involving Defendant Whitley.

61. After speaking to the FBI, Plaintiff discovered that Defendant Whitley had been convicted of sex trafficking of a minor, learned his full name for the first time, and began to recall the memories she had suppressed and/or repressed regarding Defendant Whitley.

62. As a direct and proximate result of one or more of the above-mentioned actions and/or omissions by Defendants, Plaintiff suffered significant injuries, including but not limited to the loss of liberty, invasion of privacy, humiliation and indignities, and suffered great mental and emotional pain in an amount yet to be ascertained.

63. The actions and/or omissions mentioned above by Defendants were willful, wanton, malicious, oppressive, and done with reckless indifference and/or callous disregard for Plaintiff's rights and justify the awarding of exemplary and punitive damages in an amount to be ascertained according to proof at the time of trial.

64. By reason of the above-mentioned actions and/or omissions by Defendants, Plaintiff retained attorneys to institute, prosecute, and render legal assistance to her in the within action so that they might vindicate the loss and impairment of his rights. By reason thereof, Plaintiff requests payment by Defendants of a reasonable sum for attorney's fees pursuant to 42 U.S.C. Section 1988 or any other provision set by law.

**COUNT I**

**Substantive Due Process Claim in Violation of the Fourteenth Amendment**

65. Plaintiff hereby incorporates and realleges paragraphs one (1) through sixty-four

(64) hereat as though fully set forth at this place.

66. Defendant Whitley deprived Plaintiff of her rights, privileges, and/or immunities secured to her by the Fourteenth Amendment to the Constitution of the United States and laws enacted thereunder.

67. Defendant Whitley violated Plaintiff's rights by conducting himself in a way that shocks the conscience and/or because he interfered with Plaintiff's right to bodily integrity.

68. Defendant Whitley's conduct shocks the conscience, and/or he interfered with Plaintiff's bodily integrity when he subjected her to sex trafficking, sexual conduct, and/or sexual penetration when she was a minor, which he was able to do because of the power he possessed as a police officer.

69. As a result, Plaintiff was injured emotionally, financially, and otherwise by losing certain constitutionally protected liberty and related rights.

70. Therefore, Defendant Whitley is liable pursuant to 42 U.S.C. § 1983.

## COUNT II

### Monell Claim in Violation of the Fourteenth Amendment

71. Plaintiff hereby incorporates and realleges paragraphs one (1) through sixty-four (64) hereat as though fully set forth at this place.

72. Defendant City deprived Plaintiff of her rights, privileges, and/or immunities secured to her by the Fourteenth Amendment to the Constitution of the United States and laws enacted thereunder.

73. Plaintiff had a right to bodily integrity.

74. Defendant City had a widespread custom and/or practice of failing to investigate, effectively investigate, and/or appropriately discipline its police officers for misconduct.

75. Defendant City's failure to investigate, effectively investigate, and/or appropriately discipline its police officers allowed Defendant Whitley to act with impunity and to use his police powers to lure and intimidate Plaintiff without fear of repercussion.

76. Defendant City's failure to investigate, effectively investigate, and/or appropriately discipline its police officers was deliberate because it knew of Defendant Whitley's misogynistic and predatory behaviors before he subjected Plaintiff to sex trafficking, sexual conduct, and/or sexual penetration when she was a minor, which he was able to do because of the power he possessed as a police officer.

77. Defendant City's failure to investigate, effectively investigate, and/or appropriately discipline its police officers, including Defendant Whitley, was the moving force behind Plaintiff's injuries.

78. As a direct consequence of Defendant City's conduct, Plaintiff has suffered damages, including medical expenses, emotional distress, and other consequential harm.

79. Therefore, Defendant City is liable pursuant to 42 U.S.C. § 1983.

## COUNT III

**Failure To Investigate, Effectively Investigate, and/or Appropriately Discipline Claim**

80. Plaintiff hereby incorporates and realleges paragraphs one (1) through sixty-four (64) hereat as though fully set forth at this place.

81. Defendant City engaged in willful and wanton conduct.

82. Defendant City owed Plaintiff a duty to investigate, effectively investigate, and/or appropriately discipline its police officers who showed that they are misogynistic predators who abuse their authority as police officers.

83. Defendant City breached its duty by failing to correct its longstanding custom

and/or practice of failing to investigate, effectively investigate and/or appropriately discipline its police officers for misconduct, including but not limited to instances where Defendant Whitley showed that he was a misogynist predator who abused his authority as police officers.

84. Defendant City's conduct was the direct and proximate cause of Defendant Whitley subjecting Plaintiff to sex trafficking, sexual conduct, and/or sexual penetration when she was a minor, which he was able to do so because of the power he possessed as a police officer.

85. Defendant City, as shown in its custom and/or practice, was utterly indifferent and/or consciously disregarded the welfare of Plaintiff.

86. As a direct consequence of Defendant City's conduct, Plaintiff has suffered damages, including medical expenses, emotional distress, and other consequential harm.

87. Therefore, Defendant City is liable for willful and wanton conduct.

## COUNT IV

### Childhood Sexual Abuse Claim

88. Plaintiff hereby incorporates and realleges paragraphs one (1) through sixty-four (64) hereat as though fully alleged at this place.

89. Defendant Whitley committed the act of childhood sexual abuse against Plaintiff by sexually abusing her when she was under eighteen years old.

90. Defendant Whitley sexually abused Plaintiff by engaging and/or allowing others to engage in sexual conduct and/or penetration of Plaintiff.

91. As a direct consequence of Defendant Whitley's conduct, Plaintiff has suffered damages, including medical expenses, emotional distress, and other consequential harm.

92. Thus, Defendant Whitley and Defendant City (under the doctrine of *respondeat superior*) are liable to Plaintiff for childhood sexual abuse.

## COUNT V

### Sex Trafficking Claim

93. Plaintiff hereby incorporates and realleges paragraphs one (1) through sixty-four (64) hereat as though fully alleged at this place.

94. Defendant Whitley sexually trafficked Plaintiff, violating Illinois law.

95. Defendant Whitley committed the act of sex trafficking against Plaintiff by intentionally recruiting, receiving profits, and/or maintaining Plaintiff in sex acts.

96. Defendant Whitley intentionally recruited, received profits from, and/or maintained Plaintiff in sex trade acts by allowing men to engage in sexual conduct and/or penetration with Plaintiff in exchange for money and drugs in violation of Illinois law.

97. As a direct consequence of Defendant Whitley's conduct, Plaintiff has suffered damages, including medical expenses, emotional distress, and other consequential harm.

98. Thus, Defendant Whitley and Defendant City (under the doctrine of *respondeat superior*) are liable to Plaintiff for childhood sexual abuse.

## COUNT VI

### Battery Claim

99. Plaintiff hereby incorporates and realleges paragraphs one (1) through sixty-four (64) hereat as though fully alleged at this place.

100. Defendant Whitley committed the tort of battery against Plaintiff, violating Illinois law.

101. Defendant Whitley intentionally and unlawfully made harmful and offensive contact with Plaintiff's person, without lawful justification, by engaging in sexual contact and/or penetration with her when she was a minor.

102. Defendant Whitley's intentional and unjustified acts of battery violated Plaintiff's rights under Illinois law.

103. As a direct consequence of Defendant Whitley's conduct, Plaintiff has suffered damages, including medical expenses, emotional distress, and other consequential harm.

104. Thus, Defendant Whitley and Defendant City (under the doctrine of *respondeat superior*) for the Illinois law claim of battery.

## COUNT VII

### Intentional Infliction of Emotional Distress Claim

105. Plaintiff hereby incorporates and realleges paragraphs one (1) through sixty-four (64) hereat as though fully alleged at this place.

106. Defendant Whitley committed the tort of intentional infliction of emotional distress against Plaintiff in violation of Illinois law.

107. Defendant Whitley intentionally and unlawfully committed extreme and outrageous conduct by subjecting Plaintiff to sex trafficking, sexual conduct, and/or sexual penetration when she was a minor, which he was able to do so because of the power he possessed as a police officer.

108. As a direct consequence of Defendant Whitley's conduct, Plaintiff has suffered damages, including medical expenses, emotional distress, and other consequential harm.

109. Thus, Defendant Whitley and Defendant City (under the doctrine of *respondeat superior*) for the Illinois law claim of intentional infliction of emotional distress.

**WHEREFORE**, Plaintiff JANE DOE, by and through her attorneys, ED FOX & ASSOCIATES, LTD., requests judgment as follows:

1. Defendants pay her general damages, including emotional distress, in a sum to be ascertained;

2. Defendants pay her special damages;

3. Defendants pay her attorneys fees pursuant to Section 1988 of Title 42 of the United States Code or any other applicable provision;

4. Defendants pay punitive and exemplary damages in a sum to be ascertained;

5. Defendants pay his costs of the suit herein incurred; and

6. Any such other and further relief as this Court may deem just and proper.

BY: */s/ Peter T. Sadelski*
Peter T. Sadelski
ED FOX & ASSOCIATES, LTD.
Attorneys for Plaintiffs
118 North Clinton Street, Suite 425
Chicago, Illinois 60661
(312) 345-8877
psadelski@efoxlaw.com
*Attorney for Plaintiff*

**PLAINTIFF HEREBY REQUESTS A TRIAL BY JURY**

BY: */s/ Peter T. Sadelski*
Peter T. Sadelski
ED FOX & ASSOCIATES, LTD.
Attorneys for Plaintiffs
118 North Clinton Street, Suite 425
Chicago, Illinois 60661
(312) 345-8877
psadelski@efoxlaw.com
*Attorney for Plaintiff*